STATE OF NORTH CAROLINA v. CALVIN MERLE MUNCY

No. 8518SC693

(Filed 18 February 1986)

1. **Criminal Law §§ 21, 22— waiver of probable cause hearing—agreement between defendant and State—no plea bargain**

Defendant was not entitled to dismissal of three charges against him on the ground that he entered into an agreement with the State whereby those charges would be voluntarily dismissed if he waived his right to a probable cause hearing where it appears that the agreement was never intended as a final disposition of the cases covered by the agreement, but was entered into for the purpose of moving the cases from district court to the superior court division; the agreement did not amount to a plea bargain, as there was no participation by any trial judge; and defendant did not show that he relied on the agreement to his detriment.

2. **Narcotics § 4— manufacturing cocaine—repackaging and cutting—intent to distribute not an element—sufficiency of evidence**

There was no merit to defendant's contention that the trial court erred in denying his motion to dismiss the charge of manufacturing cocaine for lack of substantial evidence that he was processing or preparing cocaine with the intent to distribute it, since the indictment alleged that defendant's acts of manufacturing were "repackaging, cutting and diluting"; intent to distribute is not a necessary element of the offense of manufacturing a controlled substance unless the manufacturing activity is preparation or compounding; and evidence that defendant had in his apartment clear plates with cocaine traces, a spoon with cocaine residue, a box containing marijuana, a butane bottle and torch, a flask, a razor blade assembly, screens, a clip, a glass straw, a black tray with a spout on the end, a chemical buffer solution, plastic baggies, a bottle of Inositol, a substance used to dilute cocaine, a bottle of cocaine, and a bottle with a mixture containing cocaine weighing 45.8 grams was sufficient to show that defendant was engaged in the conversion and processing of cocaine, acts of manufacturing which did not require that the State present evidence of intent to distribute. N.C.G.S. § 90-87(15); N.C.G.S. § 90-95(a)(1).

3. **Narcotics § 4— trafficking in cocaine—sufficiency of evidence**

Defendant could properly be convicted of trafficking in cocaine pursuant to N.C.G.S. § 90-95(h)(3) where the evidence tended to show that 45.8 grams of a mixture containing cocaine were found in defendant's refrigerator.

APPEAL by defendant from *DeRamus, Jr., Judge.* Judgment entered 26 October 1984 in Superior Court, GUILFORD County. Heard in the Court of Appeals 18 November 1985.

Defendant was tried and convicted of the following: (1) possession of marijuana with intent to sell or deliver; (2) possession of cocaine with intent to sell or deliver; (3) felonious trafficking cocaine; (4) possession of drug paraphernalia; and (5) manufacture of cocaine.

On 23 December 1983, acting upon information from a confidential informant, the Guilford County Sheriff Department Vice and Narcotics Unit began surveillance at 5515 West Market Street, Apartment 1111, Greensboro, North Carolina. The purpose of this surveillance was to identify defendant, the location of his residence and obtain other information to establish probable cause for a narcotics search warrant. Surveillance was closed off on that day but surveillance was resumed in the evening hours of 27 December 1983. Due to a lack of noteworthy activity surveillance was again terminated.

Surveillance was again conducted on 29 December 1983. During this day of surveillance a 1984 Firebird automobile was observed parked at the residence under surveillance. Based on information about the automobile obtained from a confidential informant, the North Carolina Information Center and the Wilmington Police Department, a search warrant was issued to search the residence under surveillance. Three Guilford County deputy sheriffs knocked on the door of the apartment under surveillance and identified themselves. Defendant, dressed in black shorts, answered the door and sought to deny them entrance into the apartment. The deputy sheriffs made a forcible entry into the apartment and discovered David Wright, Phyllis Smith, and defendant. Mr. Wright and Ms. Smith were seated in two chairs near the kitchen table. Defendant's coat was draped over a third chair near the table. The deputy sheriffs observed what they believed to be drug paraphernalia and controlled substances on the kitchen table. The deputies made warrantless arrests of defendant, Mr. Wright, and Ms. Smith.

Detectives executed their search warrant and seized numerous items which were sent to the S.B.I. laboratory for analysis. A search of the bedroom resulted in the officers finding

a travel bag containing, *inter alia,* an appointment book with a series of notations relating to the sale of hashish, marijuana, and "shots" of cocaine. When defendant noticed the officers emerging from the bedroom with the book, defendant stated "what are you doing with my black book." The officer made inquiry into the ownership of the Firebird parked in the parking lot and defendant responded that he had driven the automobile to the apartment, but it was leased by someone named Michael Mahan. Defendant requested that he be allowed to retrieve his personal belongings from the automobile. Officers seized the automobile and searched it. A "cocaine spoon" was found in the console of the automobile.

On 30 December 1983, while defendant was in custody, a magistrate's order was issued upon information furnished by the arresting officer. The magistrate found that there was probable cause to believe that defendant was in felonious possession with the intent to sell and deliver a controlled substance, to wit: a half pound of marijuana. G.S. 90-95(a)(1). On 7 February 1984, defendant with the consent of his attorney waived his right to a probable-cause hearing and was bound over to Guilford County Superior Court.

On 7 May 1984, three indictments naming defendant were filed. Defendant was charged in a proper bill of indictment with possession of drug paraphernalia in violation of G.S. 90-113.22, to wit: scales, butane burning equipment, water pipes, and syringes to introduce into the body marijuana and cocaine, which are controlled under the North Carolina Controlled Substance Act. Defendant was also charged in a separate bill of indictment with felonious trafficking in drugs in violation of G.S. 90-95(h), and possession with intent to sell and or deliver a controlled substance in violation of G.S. 90-95(a)(1), to wit: cocaine, a controlled substance, which is included in Schedule II of the North Carolina Controlled Substance Act. A third indictment charged defendant with felonious manufacture of a controlled substance in violation of G.S. 90-95(a)(1), to wit: cocaine. A fourth indictment returned against defendant was for felonious possession with intent to sell and or deliver a controlled substance, to wit: marijuana.

Defendant pleaded not guilty to all charges and was tried before a jury. Defendant presented his defense through cross-

examination of the State's witnesses. At the close of the State's evidence defendant made a motion to dismiss which the court denied. The jury returned verdicts of guilty on all charges against defendant. From the imposition of a twenty-one year active prison sentence defendant appeals.

*Attorney General Lacy H. Thornburg, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Acting Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender David Dorey, for defendant appellant.*

JOHNSON, Judge.

[1] Defendant's first Assignment of Error is that the trial court erred in denying defendant's motion to dismiss the charge of possession of paraphernalia and the charges of manufacturing and possession of cocaine with intent to sell or deliver. The contention made by defendant is that in reliance upon a purported agreement entered into with the State to dismiss those charges defendant waived his right to a probable-cause hearing as defined in G.S. 15A-606. Defendant argues that he relinquished such a substantial right pursuant to this purported agreement that this Court should vacate his convictions for possession of drug paraphernalia, possession of cocaine with intent to sell or deliver and manufacturing of cocaine. We disagree.

By statute defendant was entitled to a probable-cause hearing. G.S. 15A-606 provides in pertinent part the following:

(a) The judge must schedule a probable-cause hearing unless the defendant waives in writing his right to such hearing. A defendant represented by counsel, or who desires to be represented by counsel, may not before the date of the scheduled hearing waive his right to a probable-cause hearing without the written consent of the defendant and his counsel.

The written waiver, signed by defendant and his counsel, appears in the Record on Appeal. However, the purported agreement entered into by the State and defendant does not appear in the Record on Appeal. The State does not categorically deny the existence of an agreement. It goes without saying that the State and defendant differ as to the nature of the purported agreement.

The trial transcript does reveal that the trial judge did have written documentation of the agreement when the court denied defendant's pre-trial motion to dismiss the three charges (possession of paraphernalia, manufacturing cocaine, and trafficking in cocaine) which were the subject of the purported agreement. During a pre-trial conference the following colloquy took place between the court and defendant's counsel.

> Your Honor, I have, if I may approach the bench, a copy of the document that we used on that occasion and you will note that the document sets out which cases are being waived or are to be waived at that moment and which cases the District Attorney was to take a *voluntary dismissal* on, and that documentation, if Your Honor please, bears the signature of Mr. Panosh, the Assistant District Attorney in this case.

(Emphasis ours.) Defendant's counsel admitted to the court that the State had agreed to a voluntary dismissal in exchange for defendant's waiver of a probable-cause hearing. A voluntary dismissal taken by the State, pursuant to G.S. 15A-931, does not preclude the State from instituting a subsequent prosecution for the same offense if jeopardy has not attached. *See generally State v. Coffer*, 54 N.C. App. 78, 282 S.E. 2d 492 (1981). District Attorney Panosh stated to the court that the agreement was never intended as a final disposition of the cases covered by the agreement.

> [Mr. Panosh] We spoke about this matter, Your Honor. I spoke to Mr. Ray [defense counsel] yesterday and I wrote down his comments, and he said in reference to the dismissals, 'We were just talking about getting the cases from down there,' referring to the District Court, 'up here. We were not talking about a final disposition of the cases.'

> Mr. Ray, is that correct?

> MR. RAY: That is correct, if you want to lend your own interpretation to that, the final disposition of the cases, the final disposition of the cases meaning the ones that we waived up. In other words, you were asking me whether or not we were talking plea bargain, and I said, 'No, *we did not consider a final disposition of the cases at that point.' We were only trying to move the cases from District Court to the Superior Court Division.* That is correct.

(Emphasis ours.) It appears from the transcript that defendant got nothing less than was agreed upon. Defendant urges this Court to accept his assertion that the court's denial of the motion to dismiss is contrary to notions of prosecutorial and procedural fairness regarding bargains struck between an accused and the State. *See Santabedo v. New York,* 404 U.S. 257, 30 L.Ed. 2d 427, 92 S.Ct. 495 (1971). Defendant also urges this Court to analogize his agreement with a plea bargain. Our State through an intricate statutory scheme allows the trial judge to be involved with and understand the nature of any plea bargain that the State and defendant agree upon. G.S. 15A-1021. The procedural safeguards set forth in the General Statutes are more than adequate to protect a defendant's rights. However, the agreement entered into by defendant with the State falls outside those protections. While we do not address ourselves to the propriety of any such alleged agreements, we note that the General Statutes provide for and require at a certain point that the trial judge be apprised of agreements between the State and defendant whereupon the judge determines whether the plea is a product of informed choice. G.S. 15A-1022. According to the transcript of the proceedings defendant's counsel acknowledged that the only signature on the document in question approving the agreement was that of the district attorney. There was no participation by any trial judge. Moreover, we find that defendant has not shown that he relied on the agreement to his detriment. Defendant's first Assignment of Error is without merit.

[2] Defendant's second Assignment of Error is that the trial court erred in denying his motion to dismiss the charge of manufacturing cocaine for lack of substantial evidence that he was processing or preparing cocaine with the intent to distribute it. We disagree.

Defendant was convicted, *inter alia,* of a violation of G.S. 90-95(a)(1) which states that it is unlawful "[t]o *manufacture,* sell or deliver, or possess, or possess with intent to *manufacture,* sell or deliver a controlled substance. . . ." (Emphasis ours.) G.S. 90-87(15) defines manufacture as the following:

'Manufacture' means the production, preparation, propagation, compounding, *conversion, or processing of a controlled substance by any means,* whether directly or indirectly, ar-

tificially or naturally or by extraction from substances of a natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and 'manufacture' further includes any packaging or repackaging of the substance or labeling or relabeling of its container except that *this term does not include the preparation or compounding of a controlled substance by an individual for his own use.* . . .

(Emphasis ours.) Defendant contends that the State did not produce substantial evidence that he manufactured cocaine for the purpose of distributing to another.

Defendant's bill of indictment (84CRS15188) alleged that his acts of manufacturing were "repackaging, *cutting* and *diluting* with Inositol Powder, or other cutting agents." (Emphasis ours.) By his appeal defendant contends that manufacturing for personal use does not constitute a violation of G.S. 90-95(a)(1). The authority cited by defendant for this interpretation of G.S. 90-95(a)(1) is *State v. Baxter,* 21 N.C. App. 81, 203 S.E. 2d 93, *rev'd,* 285 N.C. 735, 208 S.E. 2d 696 (1974). However, *Baxter, supra,* was specifically overruled on this very point by this Court in *State v. Childers,* 41 N.C. App. 729, 255 S.E. 2d 654, *cert. denied,* 298 N.C. 302, 259 S.E. 2d 916 (1979), with Chief Judge Morris and Judge Hedrick (now Chief Judge) concurring specially in that opinion.

In *State v. Brown,* 310 N.C. 563, 313 S.E. 2d 585 (1984), our Supreme Court concluded that there are only limited exceptions where the intent to distribute is required as an element of the offense of manufacturing a controlled substance. *Id.* at 568, 313 S.E. 2d at 588. The Court agreed with the analysis of G.S. 90-87(15), articulated by this Court in *Childers, supra,* that intent to distribute is not a necessary element of the offense of manufacturing a controlled substance unless the manufacturing activity is preparation or compounding. *Brown, supra; see generally Childers, supra.* In the case *sub judice* defendant was not charged with the preparation or compounding of a controlled substance. Defendant was indicted for the cutting (dilution of a controlled substance) cocaine. This Court in *Childers, supra,* held that the intent to distribute was not necessary for a violation of G.S. 90-87(15), if a defendant is engaged in the activity of conversion or processing a controlled substance. *Childers, supra.*

We now turn to the basis for defendant's convictions to ascertain whether it comports with our interpretation of G.S. 90-87(15). When passing on a defendant's motion to dismiss at the close of the State's evidence, the court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference of fact and intendment therefrom. *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980). The evidence presented by the State in the case *sub judice* tends to show the following: When the officers arrived with a search warrant defendant answered the door in his undergarments. Two persons were seated at a kitchen table near a third chair with defendant's coat draped over the back. On the table was cocaine, two clear plates with cocaine traces, a spoon with cocaine residue, a tube with cocaine residue and a box containing marijuana, a butane bottle and torch, a flask, a razor blade assembly, screens, a clip, a glass straw, a black tray with a spout on the end, a chemical buffer solution and two plastic baggies. In defendant's jacket a bottle of Inositol was found. Inositol is a substance added to cocaine to dilute the strength of cocaine. A bottle of cocaine was found on the kitchen counter and a bottle with a mixture containing cocaine weighing 45.8 grams was found in the refrigerator.

The reasonable inference from the evidence produced at trial was that defendant was engaged in the conversion and processing of cocaine. These types of manufacturing a controlled substance do not require that the State present substantial evidence of intent to distribute. "Processing" is to subject the controlled substance to a particular method, system, technique of preparation or treatment to bring about a desired result. *Childers, supra.* "[I]n those cases where production, propagation, *conversion* or *processing* of a controlled substance are involved, the intent of the defendant, either to distribute or consume personally, will be irrelevant and does not form an element of the offense." *Childers*, at 732, 255 S.E. 2d at 656-57 (emphasis ours). We conclude the trial court was correct in denying defendant's motion to dismiss.

[3] Defendant has assigned error to the trial court's denial of his motion to dismiss the charge of trafficking in cocaine. The basis for this assignment of error is that the 45.8 grams of mixture containing cocaine should not have been considered in his conviction for trafficking in cocaine. We disagree.

G.S. 90-95(h)(3) sets forth the offense for which defendant was convicted. In pertinent part the statute defines his offense as follows:

(3). Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of coca leaves or any salts, compound, derivative, or preparation thereof which is chemically equivalent or identical to any of these substances (except decocainized coca leaves or any extraction of coca leaves which does not contain cocaine) *or any mixture containing such substance* shall be guilty of a felony which felony shall be known as 'trafficking in cocaine' and if the quantity of such substance *or mixture* involved:

a. Is 28 grams or more but less than 200 grams. . . .

G.S. 90-95(h)(3) (emphasis ours). The mixture introduced into evidence for the purpose of convicting defendant for a violation of G.S. 90-95(h) is clearly within the plain meaning of the statute. With respect to the amount of the controlled substance in the mixture this Court has held that the quantity of the entire mixture containing cocaine may be sufficient to constitute a violation of G.S. 90-95(h)(3). *State v. Tyndall*, 55 N.C. App. 57, 284 S.E. 2d 575 (1981); *State v. Willis*, 61 N.C. App. 23, 300 S.E. 2d 420, *modified*, 309 N.C. 451, 306 S.E. 2d 779 (1983). In *Tyndall, supra,* and *Willis, supra,* this Court acknowledged the legislative intent for the harsh penalties prescribed in the North Carolina Controlled Substance Act, G.S. Chap. 90-86, to wit: "to deter large scale distribution of drugs and thereby to decrease the number of people potentially harmed by drug use." *Willis*, at 42, 300 S.E. 2d at 431. The dilution of cocaine as in the case *sub judice* enhances the probability that more persons will partake of the proscribed controlled substance. Defendant's Assignment of Error is overruled.

The final question presented by defendant is whether his convictions and punishment for possession of cocaine with intent to sell or deliver and trafficking in cocaine violated his constitutional right against being placed in double jeopardy. Defendant did not raise this question in the trial court. It is well established that appellate courts will not ordinarily pass on a constitutional question unless the question was raised in and passed upon by the trial court. *State v. Cumber*, 280 N.C. 127, 185 S.E. 2d 141 (1971); *State v. Jones*, 242 N.C. 563, 89 S.E. 2d 129 (1955). In conformity with

that well established rule we will not pass upon the constitutional question defendant seeks to raise on appeal, which does not affirmatively appear in the Record on Appeal.

No error.

Chief Judge HEDRICK and Judge WHICHARD concur.