STATE OF NORTH CAROLINA v. MAURICE ALFONZO MOBLEY, Defendant

No. COA09-139

(Filed 3 November 2009)

**1. Appeal and Error— preservation of issues—Confrontation Clause**

A Confrontation Clause claim was not adequately preserved for appeal where defendant objected at trial on other grounds and plain error was not adequately argued.

**2. Appeal and Error— Rule 2—plain error review**

A Confrontation Clause issue involving DNA test results was heard under Appellate Rule 2 but only under the plain error standard. Defendant did not object appropriately at trial and did not properly preserve the claim of plain error.

**3. Constitutional Law— right to confrontation—DNA tests**

The admission of testimony from a lab analyst about DNA tests performed by other analysts did not violate the Confrontation Clause where the DNA tests were used as a basis for the witness's expert opinion and the witness independently reviewed and confirmed the results.

---

**4. Evidence— subsequent crime—admitted for intent and modus operandi**

There was no error in a rape prosecution in admitting evidence of a subsequent rape under N.C.G.S. § 8C-1, Rule 404(b) where the subsequent rape was nearly two-and-one-half years later but was admitted in part to show intent and *modus operandi*. Remoteness in time was thus less important and the subsequent rape was sufficiently proximate.

Appeal by defendant from judgments entered 30 October 2008 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 September 2009.

*Roy Cooper, Attorney General, by Chris Z. Sinha, Assistant Attorney General, for the State.*

*Geoffrey W. Hosford, for defendant-appellant.*

MARTIN, Chief Judge.

Maurice Alfonzo Mobley ("defendant") appeals from judgments entered pursuant to jury verdicts finding him guilty of three counts of second degree rape, three counts of second degree sexual offense, one count of first degree kidnapping, one count of first degree burglary, and one count of common law robbery. The trial court arrested judgment on the charge of first degree kidnapping and instead entered judgment on second degree kidnapping. The trial court found defendant had a prior record level of IV with eleven prior record points and sentenced defendant to consecutive terms of: 132 to 168 months imprisonment for each of the three second degree rape convictions and three convictions for second degree sexual offense; 46 to 65 months imprisonment for second degree kidnapping; 116 to 149 months imprisonment for first degree burglary; and 19 to 23 months imprisonment for common law robbery. Defendant gave notice of appeal in open court.

At defendant's trial, the State presented evidence tending to show that, during the late evening and early morning hours of 30 and 31 January 2000, defendant broke into the apartment of the victim and repeatedly raped and sexually assaulted her. Before leaving the victim's apartment, defendant went through the victim's purse and other property and took no more than twenty dollars. The victim believed the person who raped her was African-American.

While the victim was being treated at a local hospital, medical personnel collected evidence for a sexual assault kit and handed the completed kit to a police officer with the Charlotte-Mecklenburg Police Department. Subsequent testing of the evidence in the sexual assault kit matched the DNA profile of the man who raped and assaulted the victim to the DNA profile of defendant. The State also presented testimonial and DNA evidence regarding another rape committed by defendant on 17 May 2002, under N.C.G.S. § 8C-1, Rule 404(b), for the purpose of establishing the identification, intent, and *modus operandi* of defendant. Defendant did not present any evidence at trial.

[1] Defendant first argues the trial court erred in admitting testimony of an analyst at the Charlotte-Mecklenburg Police Crime Lab regarding DNA tests performed by other analysts. Defendant alleges this testimony violates his constitutional right to confront the witnesses against him.

The Sixth Amendment to the United States Constitution provides in part that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause forbids "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53-54, 158 L. Ed. 2d 177, 194 (2004). We note that, at trial, defendant only raised an objection to this testimony on hearsay grounds and did not raise the constitutional question. "It is well established that appellate courts will not ordinarily pass on a constitutional question unless the question was raised in and passed upon by the trial court." *State v. Muncy,* 79 N.C. App. 356, 364, 339 S.E.2d 466, 471, *disc. review denied,* 316 N.C. 736, 345 S.E.2d 396 (1986). However, the North Carolina Rules of Appellate Procedure allow review for "plain error" in criminal cases even where the error is not preserved "where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(c)(4) (2009) (amended Oct. 1, 2009).

While defendant mentions plain error in passing in his brief, he has not adequately argued plain error. Case law requires that, in order for an appellate court to review for plain error, defendant must bear the burden of showing either "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a

fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). An "empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). In his brief, defendant merely sets forth the standard of review for plain error and states that the standard is met in this case. Defendant has thus abandoned his claim of plain error and not properly preserved this issue for review. *See* N.C.R. App. P. 28(b)(6) (2009) (amended Oct. 1, 2009) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

[2] The only remaining avenue open for review of defendant's claim is review under Rule 2 of the North Carolina Rules of Appellate Procedure. N.C.R. App. P. 2. This rule, used to prevent manifest injustice to a party, is exercised "cautiously" and only in "exceptional circumstances [to consider] significant issues of importance." *State v. Hart*, 361 N.C. 309, 315, 644 S.E.2d 201, 205 (2007) (internal quotation marks omitted from second quotation), *aff'd after remand*, —— N.C. App. ——, 673 S.E.2d 799 (2009). However, it has been exercised on several occasions to review issues of constitutional importance. *See State v. Dudley*, 319 N.C. 656, 356 S.E.2d 361 (1987) (using Rule 2 when defendant claimed a violation of the double jeopardy prohibition); *State v. Wiley*, 355 N.C. 592, 565 S.E.2d 22 (2002) (using Rule 2 to review alleged violation of the prohibition against the enactment of *ex post facto* laws), *cert. denied*, 537 U.S. 1117, 154 L. E. 2d 795 (2003). We conclude that this is an appropriate circumstance in which to exercise this discretionary review. In doing so, however, we apply only the plain error standard of review rather than the constitutional error standard which requires the State to show that the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2007); *State v. Lemons*, 352 N.C. 87, 92, 530 S.E.2d 542, 545 (2000), *cert. denied*, 531 U.S. 1091, 148 L. Ed. 2d 698 (2001). Thus, we review to determine whether the alleged error was such that it amounted to a fundamental miscarriage of justice or had a probable impact on the jury's verdict.

[3] This case requires us to consider the applicability of the United States Supreme Court's recent decision in *Melendez-Diaz v. Massachusetts*, —— U.S. ——, 174 L. Ed. 2d 314 (2009). In *Melendez-Diaz*, sworn certificates from analysts affirming that the substance tested was cocaine were determined to be testimonial. Therefore, the

analysts must be available for cross-examination by the defendant, or the evidence would be inadmissible absent a showing of unavailability and a prior opportunity by the defendant to cross-examine the analysts. Although the Court in *Melendez-Diaz* addressed only drug testing, the Court's analysis easily implicates DNA testing as well.

Our Supreme Court recently addressed *Melendez-Diaz* in *State v. Locklear*, 363 N.C. 438, 681 S.E.2d 293 (2009). The Court in *Locklear* held that testimony from John Butts, the Chief Medical Examiner of North Carolina, concerning the results of an autopsy and identification of the remains of Cynthia Wheeler, an alleged prior victim, performed by non-testifying experts violated the Confrontation Clause. In its analysis, the Supreme Court pointed to two particular areas of Dr. Butt's testimony. The first concerned the cause of death. According to the Court, Dr. Butts testified that, "according to the autopsy report prepared by Dr. Chancellor, the cause of Wheeler's death was blunt force injuries to the chest and head." *Locklear*, 363 N.C. at 451, 681 S.E.2d at 304. The second concerned the identity of Wheeler. According to the Court, Dr. Butts stated, "by comparing Wheeler's dental records to the skeletal remains, Dr. Burkes positively identified the body as that of Wheeler." *Id.* These excerpts indicate that Dr. Butts was merely reporting the results of other experts. He did not testify to his own expert opinion based upon the tests performed by other experts, nor did he testify to any review of the conclusions of the underlying reports or of any independent comparison performed.

However, the testimony in the case *sub judice* is distinguishable. In this case, the testifying expert, Aby Moeykens, testified not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data. Defendant has not challenged the propriety of the methods used by the crime lab, therefore, Ms. Moeykens was justified in relying on those procedures in her analysis. Her first step in forming her opinion was to review the original data and controls of the underlying reports from the buccal swab and the vaginal swab. Upon coming to the conclusion that each profile was generated properly, she testified in the following manner:

Q. Did you make a technical review of [John Donahue's comparison between the profile in the buccal swab related to Maurice Mobley and the profile obtained from the vaginal swab]?

A. Yes; I looked both at the original data from Kelly Smith [who performed the vaginal swab] and also the data from the buccal swab run by John Donahue.

Q. Based upon your technical review what did you find?

A. The profile obtained from the sperm cell fraction of the vaginal swab from Sherley Louis matches the profile obtained from the buccal swab of Maurice Mobley.

She, then, testified to how she came to the conclusion that the two profiles matched by comparing the numerical values at certain gene locations. Thus, based on her own review of the reports, she came to the conclusion that the two DNA profiles were a match. Ms. Moeykens also testified to a review of the tests performed by John Donahue in relation to defendant's conviction for the rape of Wanda Hairston, which was presented as 404(b) evidence. She testified to the same review procedure outlined above with regard to this evidence. During direct examination she was asked:

Q. Based upon your review of [John Donahue's] data what opinion did you form?

MR. TROBICH: OBJECTION.

THE COURT: OVERRULED.

A. The DNA profile obtained from the buccal swab from Maurice Mobley matched the DNA profile from the vaginal swab from Wanda Hairston.

Well-settled North Carolina case law allows an expert to testify to his or her own conclusions based on the testing of others in the field. *State v. Delaney*, 171 N.C. App. 141, 144, 613 S.E.2d 699, 701 (2005). This Court has held that evidence offered as the basis of an expert's opinion is not being offered for the truth of the matter asserted. *See State v. Walker*, 170 N.C. App. 632, 635, 613 S.E.2d 330, 333, *disc. review denied*, 359 N.C. 856, 620 S.E.2d 196 (2005). The United States Supreme Court in *Crawford v. Washington* noted that evidence offered for purposes other than proof of the matter asserted did not violate the Confrontation Clause. *Crawford*, 541 U.S. at 59-60 n.9, 158 L. Ed. 2d at 197-198 n.9. In *Melendez-Diaz*, the certificates at issue were being introduced not as the basis for any expert's opinion but as *prima facie* evidence that the substance was cocaine. *Melendez-Diaz*, —— U.S. at ——, 174 L. Ed. 2d at 320. Thus, such evidence would implicate the Confrontation Clause. By contrast, in this case, the

underlying report, which would be testimonial on its own, is used as a basis for the opinion of an expert who independently reviewed and confirmed the results, and is therefore not offered for the proof of the matter asserted under North Carolina case law. Therefore, we hold Ms. Moeykens's testimony does not violate the Confrontation Clause even in light of *Melendez-Diaz*. These assignments of error are overruled.

**[4]** Defendant next argues the trial court erred in permitting the State to introduce evidence regarding defendant's subsequent rape of another woman pursuant to Rule 404(b) of the North Carolina Rules of Evidence. We disagree.

N.C.G.S. § 8C-1, Rule 404(b) provides, in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007).

"[A] careful reading of Rule 404(b) clearly shows[] [that] evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986). The Rule, however, is "constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002), *aff'd on appeal after remand*, 359 N.C. 741, 616 S.E.2d 500 (2005), *cert. denied*, 547 U.S. 1076, 164 L. Ed. 2d 528 (2006). We review a trial court's decision to admit evidence under Rule 404(b) only for abuse of discretion. *State v. Ray*, — N.C. App. —, —, 678 S.E.2d 378, 384 (2009).

While defendant concedes that the two occurrences were factually similar, he contends this evidence was inadmissible under Rule 404(b) because the subsequent rape was not a "prior" act and was not temporally proximate to the current offenses, having occurred on 17 May 2002, nearly two and a half years after 30 January 2000, the date of the current offenses.

Our Supreme Court has discussed the impact of the temporal proximity of the other crime, wrong, or act in terms of its remoteness to the offense for which the defendant is charged:

Remoteness for purposes of 404(b) must be considered in light of the specific facts of each case and the purposes for which the evidence is being offered. For some 404(b) purposes, remoteness in time is critical to the relevance of the evidence for those purposes; but for other purposes, remoteness may not be as important. For example, . . . remoteness in time may be significant when the evidence of the prior crime is introduced to show that both crimes arose out of a common scheme or plan; but remoteness is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident.

*State v. Hipps*, 348 N.C. 377, 405, 501 S.E.2d 625, 642 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 114 (1999).

Here, after hearing the State's offer of proof and the arguments of counsel, the trial court ruled the evidence was admissible under Rule 404(b) as proof of the identification, intent, and *modus operandi* of defendant. The trial court expressly limited the admission of the evidence of the subsequent rape in instructions to the jury both before the tender of the evidence and in its final mandate to the jury immediately prior to their deliberations. As the evidence of the subsequent rape was admitted in part to show intent and *modus operandi* of defendant, remoteness in time of the second act is less important to its admissibility. *Id.*

As defendant concedes, this Court has upheld the admission of evidence under Rule 404(b) where the crimes, wrongs, or acts occurred after the offenses for which a defendant was on trial. *State v. Hutchinson*, 139 N.C. App. 132, 136, 532 S.E.2d 569, 572 (2000) (holding "the trial court properly admitted evidence of defendant's subsequent conduct in determining whether he possessed the intent and motive for the first degree burglary charge"). Indeed, under the plain language of the rule, there is no requirement that the crimes, wrongs, or acts occur prior to the charged offenses, only that they are "other" crimes, wrongs, or acts. *Id.*

Further, the nearly two-and-a-half-year span between the offenses is not so long as to affect the admissibility of the evidence, but rather goes to the weight of the evidence. *State v. Beckham*, 145 N.C. App. 119, 122, 550 S.E.2d 231, 235 (2001) (holding, as to the admissibility of prior bad acts that allegedly took place fourteen and twelve years before the acts alleged in that case, that "the lapse of time between the defendant's sexual acts . . . goes to the weight of the evidence, not to its admissibility"); *see also State v. Love*, 152 N.C. App.

608, 613, 568 S.E.2d 320, 324 (2002) ("[O]ur Courts have permitted tes-
timony of prior acts of sexual misconduct which occurred greater
than seven to twelve years earlier."), *disc. review denied*, 357 N.C.
168, 581 S.E.2d 66 (2003). Accordingly, the trial court did not err in
admitting the evidence of the subsequent rape under Rule 404(b)
because the subsequent rape was sufficiently temporally proximate
to the charged offenses. These assignments of error are overruled.
Defendant's remaining assignments of error, set forth in the record on
appeal, but not argued in his brief to this Court, are deemed aban-
doned. N.C.R. App. P. 28(b)(6) (2009) (amended Oct. 1, 2009).

No error.

Judges ROBERT C. HUNTER and BRYANT concur.