STATE OF NORTH CAROLINA v. THOMAS LEE BRENNAN

No. COA09-1362

(Filed 4 May 2010)

**1. Appeal and Error— preservation of issues—constitutional issue not raised at trial—plain error not raised in brief—considered under Rule 2**

   A Confrontation Clause argument against the admission of expert testimony from a forensic chemist who relied upon reports from an absent chemist was reviewed for plain error under

STATE v. BRENNAN

[203 N.C. App. 698 (2010)]

Rule 2 of the Appellate Rules of Procedure even though defendant had not objected to the evidence on constitutional grounds at trial and did not mention plain error in his brief.

**2. Constitutional Law— right to confront witnesses—forensic chemists—reporting lab results of others**

The trial court erred by admitting testimony that material seized from defendant was cocaine where the testimony was given by a SBI forensic chemist based on the reports of another chemist who performed the tests. It is obvious from the testimony that the witness was merely reporting the results of other experts.

Appeal by defendant from judgment entered 16 April 2009 by Judge James U. Downs in Superior Court, Swain County. Heard in the Court of Appeals 8 March 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Barry H. Bloch, for the State.*

*Jon W. Myers, for defendant-appellant.*

WYNN, Judge.

"The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence [such as a forensic analysis] unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant."[1] In the present case, the State sought to introduce evidence identifying a purported controlled substance through the testimony of a witness who had read the affidavit of the chemical analyst. Because this procedure violated Defendant's right to confront the witnesses against him, we now reverse the judgment of the trial court.

This appeal arises from the arrest and conviction of Defendant on charges of felony possession of a Schedule II controlled substance, possession of drug paraphernalia, and attaining habitual felon status. Following a consensual search of Defendant's vehicle, a law enforcement officer found a small cigarette box that contained a pipe which appeared to have residue of a controlled substance. Another law enforcement officer put the cigarette box containing the pipe in a plastic bag, sealed it, completed a State Bureau of Investigation ("SBI") form, packaged the items for mailing, and sent the package to the SBI Western Regional Laboratory for testing.

---

1. *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009).

At trial, SBI Agent Misty Icard testified regarding what was done with the items that were received. Upon the State's motion, the trial court received Agent Icard as an expert in the field of forensic chemistry.

Agent Icard testified that Agent Lori Knott was the chemist who analyzed the evidence received from the Swain County Sheriff's Department. Agent Icard testified that Agent Knott had transferred to the SBI Triad Laboratory in Greensboro and was not in court for the trial because she was sick. Agent Icard testified that she reviewed the results of the tests performed by Agent Knott and formed an opinion to a reasonable degree of scientific certainty that the substance found in the pipe was cocaine base, a Schedule II controlled substance. A jury found Defendant guilty of felony possession of a Schedule II controlled substance, possession of drug paraphernalia, and attaining habitual felon status.

[1] On appeal, Defendant argues that under the recently decided United States Supreme Court cases of *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177 (2004), and *Melendez-Diaz v. Massachusetts,* 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), the admission of Agent Icard's testimony regarding Agent Knott's chemical tests violated his Sixth Amendment constitutional right to confront witnesses against him. Preliminarily, however, we must address the State's observation that Defendant failed to raise any constitutional objections to Agent Icard's testimony at trial. Defendant's objections at trial were allegations that Agent Icard's testimony was inadmissible hearsay.

This Court recently addressed a similar issue in *State v. Mobley,* —— N.C. App. ——, 684 S.E.2d 508 (2009):

> We note that, at trial, defendant only raised an objection to this testimony on hearsay grounds and did not raise the constitutional question. "It is well established that appellate courts will not ordinarily pass on a constitutional question unless the question was raised in and passed upon by the trial court." *State v. Muncy,* 79 N.C. App. 356, 364, 339 S.E.2d 466, 471, *disc. review denied,* 316 N.C. 736, 345 S.E.2d 396 (1986). However, the North Carolina Rules of Appellate Procedure allow review for "plain error" in criminal cases even where the error is not preserved "where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(c)(4) (2009) (amended Oct. 1, 2009).

*Id.* at ——, 684 S.E.2d at 510.

Additionally, the Court in *Mobley* noted that although defendant had mentioned plain error in his brief, he had not adequately argued plain error. *Id.* at ——, 684 S.E.2d at 510. "Defendant has thus abandoned his claim of plain error and not properly preserved this issue for review." *Id.* at ——, 684 S.E.2d at 510.

In the present case, Defendant has not even mentioned the plain error standard. Consequently, as in *Mobley*, "[t]he only remaining avenue open for review of defendant's claim is review under Rule 2 of the North Carolina Rules of Appellate Procedure." *Id.* at ——, 684 S.E.2d at 510. In that regard, *Mobley* concluded that this claimed constitutional error is of such magnitude that review under Rule 2 may be appropriate. "[Rule 2] has been exercised on several occasions to review issues of constitutional importance. We conclude that this is an appropriate circumstance in which to exercise this discretionary review." *Id.* at ——, 684 S.E.2d at 510 (citations omitted). *Mobley* specified, however, that the appropriate standard of review was the plain error standard rather than the constitutional error standard. *Id.* at ——, 684 S.E.2d at 510. Accordingly, following the precedent of *Mobley*, we review Defendant's conviction for plain error pursuant to Rule 2 "to determine whether the alleged error was such that it amounted to a fundamental miscarriage of justice or had a probable impact on the jury's verdict." *Id.* at ——, 684 S.E.2d at 510.

[2] In *Melendez-Diaz* the United States Supreme Court refined the *Crawford* analysis of whether affidavits could stand in place of expert witness testimony. "[S]worn certificates from analysts affirming that the substance tested was cocaine were determined to be testimonial. Therefore, the analysts must be available for cross-examination by the defendant, or the evidence would be inadmissible absent a showing of unavailability and a prior opportunity by the defendant to cross-examine the analysts." *Id.* at ——, 684 S.E.2d at 510-11.

Two North Carolina cases that have considered the impact of *Melendez-Diaz* are *State v. Locklear* and *State v. Mobley*. "The Court in *Locklear* held that testimony from John Butts, the Chief Medical Examiner of North Carolina, concerning the results of an autopsy and identification of the remains of Cynthia Wheeler, an alleged prior victim, performed by non-testifying experts violated the Confrontation Clause." *Mobley*, —— N.C. App. at ——, 684 S.E.2d at 511. This was because "Dr. Butts was merely reporting the results of other experts. He did not testify to his own expert opinion based upon the tests performed by other experts, nor did he testify to any review of the con-

clusions of the underlying reports or of any independent comparison performed."[2] *Id.* at —, 684 S.E.2d at 511.

By contrast, *Mobley* held the testimony in that case was distinguishable. "Well-settled North Carolina case law allows an expert to testify to his or her own conclusions based on the testing of others in the field." *Id.* at —, 684 S.E.2d at 511. (citing *State v. Delaney,* 171 N.C. App. 141, 144, 613 S.E.2d 699, 701 (2005)). In *Mobley,* "the testifying expert . . . testified not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data." *Id.* at —, 684 S.E.2d at 511. We must therefore determine, in this case, whether Agent Icard was merely reporting the results of other experts or was testifying to her own technical review of the tests and her expert opinion of the accuracy of the tests.

At trial, Agent Icard was accepted as an expert in the field of forensic chemistry. She testified that the laboratory in which she works has standard operating procedures and she proceeded to explain what that procedure would be in the case of a substance suspected to be a Schedule II controlled substance. With regard to the identification of the substance, Agent Icard testified that her opinion to a reasonable degree of scientific certainty was that the substance was cocaine base which is a Schedule II controlled substance.

On cross examination, however, Agent Icard testified:

Q: You didn't watch Ms. Knott do any of these tests?

A: No, that's not what reviewing a case is about. Reviewing a case is to take their data, their notes and to look at it and say yes I agree with their conclusion.

. . . .

Q: Did you ever have a chance before today to examine this material that you've got in front of you? I'm talking about the substance itself?

A: No.

Q: So this is the first time you've seen this?

A: Yes.

---

2. The Court in *Locklear* went on to find that the constitutional violation was harmless beyond a reasonable doubt. *Locklear,* 363 N.C. at 453, 681 S.E.2d at 305.

Q: And you're testifying today that your opinion is that it's a Schedule 2 Controlled Substance?

A: Yes, from reviewing her data I can say that that is a controlled substance—Schedule 2 Controlled Substance, cocaine base.

Q: But you're relying on someone else's data to make that opinion, aren't you?

A: I'm relying on data that was generated from this case.

Q: But you didn't generate that data yourself, did you?

A: No.

Q: And you're relying on someone else's data to form that opinion, correct?

A: Correct.

It is obvious from the above-excerpted testimony that Agent Icard was merely reporting the results of other experts. We cannot conclude from this, as this Court did in *Mobley*, that "the underlying report, which would be testimonial on its own, is used as a basis for the opinion of an expert who independently reviewed and confirmed the results, and is therefore not offered for the proof of the matter asserted under North Carolina case law." *Id.* at ——, 684 S.E.2d at 512. On the contrary, as Agent Icard explained on cross-examination, her "review" consisted entirely of testifying in accordance with what the underlying report indicated. Although there is some indication that Agent Knott was unavailable due to illness, there is no indication in the record of any prior opportunity by Defendant to cross-examine Agent Knott.

Agent Icard did no independent research to confirm Agent Knott's results; in fact, she saw the substance for the first time in open court when she testified to what—in her expert opinion—it was. Such expertise is manifestly no more reliable than lay opinion based on a visual inspection of suspected powder cocaine, such as has been deemed inadmissible. *See State v. Llamas-Hernandez*, 189 N.C. App. 640, 652, 659 S.E.2d 79, 86 (2008) (Steelman, J., dissenting), *rev'd for reasons stated in the dissent*, 363 N.C. 8, 673 S.E.2d 658 (2009) (per curiam). Insofar as Agent Icard testified to Agent Knott's results, the testimony violated Defendant's constitutional rights as interpreted in *Melendez-Diaz* and *Locklear*.

Moreover, it does not appear that the State could have carried its burden of establishing Defendant's guilt of possessing a controlled

substance without Agent Icard's inadmissible identification of the controlled substance. *See id.* The State asks this Court to indulge in a "reasonable inference" from Ms. Brennan's confession to having smoked crack cocaine earlier in the day, and Defendant's request that Trooper Ammons throw the cigarette box away, that the substance was in fact cocaine base. Such an inference would inevitably corrode a defendant's Sixth Amendment right to confront his accusers.

The admission of Agent Icard's recitation of Agent Knott's report impermissibly violated Defendant's right to confront witnesses against him. The error was prejudicial insofar as it had a probable impact on the jury's verdict. Defendant is therefore entitled to a

New trial.

Chief Judge MARTIN and Judge STEPHENS concur.