An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1250
NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

    v.

SEVERN LEE WILLIAMS

Wake County
No. 10 CRS 3417

Appeal by defendant from judgment entered 21 February 2013 by Judge G. Wayne Abernathy in Wake County Superior Court. Heard in the Court of Appeals 18 March 2014.

> *Roy Cooper, Attorney General, by Daniel D. Addison, Special Deputy Attorney General, for the State.*

> *Law Offices of John R. Mills NPC, by John R. Mills, for defendant-appellant.*

STEELMAN, Judge.

Where defendant failed to preserve Constitutional error, his argument on appeal is dismissed. Where the trial court found that a statement defendant contended was an inconsistent statement of a State's witness was actually the statement of defendant, the trial court did not err in excluding the statement. Where the State's closing arguments were not grossly

improper, the trial court did not err in failing to intervene *ex mero motu.*

### I. Factual and Procedural Background

On 16 October 2009, after midnight, the phone of Severn Lee Williams (defendant) was used to call Excel Taxicab (Excel) dispatch. Friday Asoburuenwu (Friday), a taxi driver employed by Excel, responded to the call, and proceeded to Hoyle Drive in Raleigh. Friday arrived, and took on his passenger, a black man wearing a toboggan. The passenger pulled out a gun, threatened and shot Friday, and ordered him to drive. Upon reaching his destination, as the passenger started to leave the taxi, Friday was able to grab and retain his toboggan. The passenger then fled to a black four-door car. Friday called 911, received medical treatment, and gave a statement to police. Friday was able to identify defendant's picture from a photographic lineup.

Police called the telephone number that had requested Friday's taxi, and defendant answered. Defendant claimed that he had gone to a Circle K that night to purchase beer, and had driven his brother's vehicle to the store. Police then met with defendant, and defendant told them that he had allowed a friend to use his cellular telephone to call a cab. However, defendant

could not provide a name of any person who had used his telephone, instead providing a vague description. Defendant claimed that he didn't know where the man lived or where he went after using defendant's telephone. Police asked defendant to identify the Circle K. Defendant then said that he did not actually go into the store, because a friend named Spook called him and offered him beer near the store. Defendant told police that he didn't meet Spook in the parking lot, but in apartments located behind Circle K. When police asked in which apartment Spook lived, defendant responded that he didn't know, that he didn't actually go to an apartment, that he and Spook hung out in the parking lot drinking, and it was at that point that the unknown man borrowed defendant's telephone. Police asked for Spook's telephone number, but defendant said that he did not know it, that he did not have it in his address book, that his telephone erases telephone numbers, and that he had cleared his cell-phone history. Defendant claimed that he did not know how Spook had his telephone number. When asked how defendant knew Spook, defendant claimed that they had been introduced by a mutual friend named Dwight, but that defendant did not know Dwight's telephone number or how to get in touch with him. Police checked defendant's cellular telephone records, and found

that only two calls went to defendant's telephone that night: one from his aunt, and one from a female friend. There were no calls received from or made to anyone named Dwight or Spook.

Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury, first-degree kidnapping, attempted robbery with a dangerous weapon, and possession of a firearm by a felon. Defendant was found not guilty of assault with a deadly weapon and possession of a firearm by a felon, but guilty of first-degree kidnapping and attempted robbery with a firearm. The trial court sentenced defendant to an active term of imprisonment of 93-120 months for attempted robbery, and arrested judgment on the kidnapping charge.

Defendant appeals.

## II. Exclusion of Prior Inconsistent Statement

In his first argument, defendant contends that he was denied his right to confront the witnesses against him as a result of the trial court's exclusion of a witness' prior inconsistent statement. We disagree.

### A. Standard of Review

> "It is well established that appellate courts will not ordinarily pass on a constitutional question unless the question was raised in and passed upon by the trial

court." *State v. Muncy*, 79 N.C. App. 356, 364, 339 S.E.2d 466, 471, *disc. review denied*, 316 N.C. 736, 345 S.E.2d 396 (1986).

*State v. Mobley*, 200 N.C. App. 570, 572, 684 S.E.2d 508, 510 (2009). "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal[.]" *State v. Anthony*, 354 N.C. 372, 389, 555 S.E.2d 557, 571 (2001) (quoting *State v. Lloyd,* 354 N.C. 76, 86–87, 552 S.E.2d 596, 607 (2001)).

[T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (quoting *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

## B. Analysis

In the instant case, the State presented testimony from Charles Bostic (Bostic), a jailhouse informant, who testified about what defendant told him concerning plans to commit the robbery of the taxi. After the State's direct examination of Bostic, defendant sought to introduce a letter, written by defendant but signed by Bostic, which stated that defendant was not aware of or involved with the alleged crimes. Defendant sought to introduce this evidence as a prior inconsistent statement for purposes of impeachment. After a *voir dire* hearing regarding the letter, the trial court excluded it. Defendant did not except to its exclusion at trial. On appeal, defendant contends that this was error or, in the alternative, plain error, and that its exclusion violated defendant's rights under the Confrontation Clause of the United States and North Carolina Constitutions.

Defendant made no Constitutional argument at trial, and thus did not properly preserve this issue for appellate review. Constitutional issues not addressed by the trial court will not be addressed for the first time on appeal. *Mobley*, 200 N.C. App. at 572, 684 S.E.2d at 510. Further, plain error review is limited to evidentiary and jury instruction issues. *See State*

*v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). This argument is dismissed.

Even assuming *arguendo* that this Court could review defendant's arguments for plain error, we hold that defendant has failed to show the necessary prejudice. Defendant contends that the two statements, Bostic's testimony at trial and his adopted statement in the letter, were inconsistent, and that Bostic's testimony was vital to the State's case. However, Bostic's testimony is hardly the only evidence tying defendant to the crimes charged. Evidence was presented of defendant's inconsistent statements, of Friday's identification of defendant, and of the presence of the black car.

Further, Bostic's *voir dire* testimony clearly showed that the letter was defendant's statement, not that of Bostic. Had defendant testified at trial, the trial court held that the statement would have been admissible to corroborate defendant's testimony. However, defendant did not testify at trial, nor did he present any evidence.

Even assuming *arguendo* that defendant was improperly prevented from impeaching Bostic, we hold that any such exclusion did not have a probable impact on the jury's finding that defendant was guilty.

This argument is dismissed.

### III. Improper Closing Arguments

In his second argument, defendant contends that the trial court erred in failing to intervene *ex mero motu* during the State's closing arguments.  We disagree.

### A. Standard of Review

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).

> In determining whether argument was grossly improper, this Court considers "the context in which the remarks were made," *State v. Green,* 336 N.C. 142, 188, 443 S.E.2d 14, 41, *cert. denied,* 513 U.S. 1046 (1994), as well as their brevity relative to the closing argument as a whole, *see State v. Fletcher,* 354 N.C. 455, 484–85, 555 S.E.2d 534, 552 (2001) (reasoning that when "[t]he offending comment was not only brief, but ... was made

> in the context of a proper ... argument," it was not grossly improper), *cert. denied,* 537 U.S. 846 (2002).

*State v. Taylor*, 362 N.C. 514, 536, 669 S.E.2d 239, 259 (2008).

### B. Analysis

During the closing arguments, the State made the following statements:

> He [defense counsel] is an advocate for Severn Williams.  That's his job. I'm not an advocate for anybody. I have no client. I have the facts and I have the law.

Defendant contends that this remark was grossly improper, as it was "a distortion of the prosecutor's role and undermines the adversarial process."

We note that the portion of the State's argument complained of on appeal is an exceptionally small portion of the State's closing argument that covered nearly twenty pages of transcript. In *State v. Taylor*, our Supreme Court held that we must consider the context and brevity of the remarks made.  *Taylor*, 362 N.C. at 536, 669 S.E.2d at 259.  In the instant case, the context of the remarks complained of on appeal was that of a rhetorical flourish; they were a brief portion of the State's arguments, and were insignificant and tangential when compared with the thrust of the arguments which followed.  The remarks themselves cast no aspersions on defendant or defense counsel; they are not

*ad hominem* attacks, which are frowned upon by our courts, but merely a form of litigative puffery.  Accordingly, we hold that these remarks were not so grossly improper as to require the trial court to have intervened *ex mero motu*.

The trial court did not err in failing to intervene *ex mero motu*.

NO ERROR.

Judges HUNTER, Robert C., and BRYANT concur.

Report per Rule 30(e).