STATE OF NORTH CAROLINA v. JORGE ALBERTO GALINDO, Defendant

No. COA09-49

(Filed 20 October 2009)

**Constitutional Law— right to confrontation—chemical analysis testimony—harmless error beyond reasonable doubt—overwhelming evidence of guilt**

Although the admission of an expert's testimony regarding the weight of cocaine found at defendant's residence violated his Sixth Amendment right to confrontation since the testifying expert did not personally perform the analysis and generate the lab report, the error was harmless beyond a reasonable doubt. Defendant's own statement, with the unchallenged testimony of law enforcement officers, established beyond a reasonable doubt that a reasonable jury would have found defendant guilty of trafficking in cocaine even without the expert's testimony.

Appeal by defendant from judgment entered 2 June 2008 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 August 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly W. Duffley, for the State.*

*Robert W. Ewing for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Jorge Alberto Galindo appeals his convictions for trafficking in cocaine by possession and felonious possession of marijuana. In his sole argument on appeal, defendant contends that admitted expert testimony regarding the weight of the cocaine found at his residence was impermissible hearsay and violated his right to confrontation as the testifying expert did not personally perform the analysis and generate the lab report. Although the admission of the expert's testimony violated defendant's Sixth Amendment right to confrontation, we conclude that the error was harmless beyond a reasonable doubt. We, therefore, uphold defendant's convictions.

Facts

The State's evidence tended to establish the following facts at trial. Based on an informant's tip that drugs were being sold out of a residence on West Ridge Road in Charlotte, North Carolina, Officer

**STATE v. GALINDO**

[200 N.C. App. 410 (2009)]

Steve Selogy with the Charlotte-Mecklenburg Police Department obtained and, along with other officers, executed a search warrant of the residence on 21 August 2007. Selogy and another officer went around the back of the house and saw a van in the driveway, with a man in the driver's seat and defendant standing roughly six feet away. When the officers approached the van, they saw a "clear baggie of a white powdery substance" in the cup holder of the center console. The substance was seized and the two men were handcuffed, frisked for weapons, and then taken inside the residence.

Once inside, Selogy asked the occupants who was in charge of the house. Defendant stated that it was his house. Selogy took defendant into his bedroom and read defendant his *Miranda* rights. He explained to defendant that the house was titled in his father's name and asked whether his father was involved. Defendant responded that anything the police found in the house belonged to him; his father knew nothing about what was going on in the house. Selogy then asked defendant if there was any cocaine, marijuana, or weapons in the house. Defendant responded by pointing to the closet in his bedroom, where the police found a shoe box containing "one kilogram of powder cocaine" that had been "wrapped really tightly with cellophane." The cocaine had a handgun on top of it and another one underneath it.

Selogy asked if there was anything else in the house and defendant told him that there was marijuana in plastic bags in the closet to the right of the shoe box and that there was more cocaine in a "college refrigerator" behind defendant in the bedroom. Inside, officers found several bags of powder cocaine on the top shelf. Defendant also indicated that there was money in the pocket of his Carolina Panthers' jacket; Selogy found over $1,200.00 in the jacket. On the floor of the bedroom closet, officers found roughly eight pounds of marijuana wrapped in cellophane. In addition to what the officers found in the van and defendant's bedroom, a plastic bag containing cocaine was found inside a box of hot chocolate in the kitchen.

Defendant was arrested and charged with trafficking in cocaine by possession and felonious possession of marijuana. Defendant pled not guilty and the case proceeded to trial. Selogy testified at trial that he was responsible for preparing the property control sheets specifying the amount of drugs seized from the West Ridge Road residence. He stated that the property control sheet indicated that (1) 2.2 pounds of cocaine were found in defendant's bedroom; (2) 100 grams of cocaine were seized from the fridge; (3) 0.7 grams were discovered

in another closet; (4) 28.9 grams were found in the van; (5) 32.5 grams were discovered in the kitchen; and (6) 11.8 grams were found in a shirt in defendant's bedroom.

Officer Steven Whitsell, a narcotics officer with the Charlotte-Mecklenburg Police Department, testified that he interviewed defendant later on 21 August 2007 and prepared a typed statement describing the interview. According to the statement, defendant told Whitsell "that there was approximately 7-8 pounds of marijuana, approximately a kilogram of cocaine and two guns that he had purchased." Defendant told Whitsell that he had paid "$3000 for the marijuana, $15000 for the kilo of cocaine, and $400 for the guns."

Michael Aldridge, a chemist with the Charlotte-Mecklenburg Police Department crime laboratory, testified that he had been the supervisor of the lab for 20 years. Aldridge testified that although he did not personally weigh or observe the weighing of the seized cocaine, as part of his supervisory duties he calibrated the scale on which it was weighed both the month before and after it was weighed and found that the scale was in "perfect working order." When asked, Aldridge stated that the analyst that had identified and weighed the cocaine and prepared the lab report was currently working in a crime lab in South Carolina and that she had not been subpoenaed to testify.

Aldridge explained the chain of custody procedures at the lab and stated that they had been followed in this case. Aldridge stated that the lab's analysis procedures exceeded industry standards and that the types of tests performed and recorded in the lab's reports are relied upon by experts in the field of forensic chemistry. Aldridge then went on to testify that in his opinion—based "solely" on the lab report—the substances seized from the West Ridge Road residence were, in fact, marijuana and cocaine. With respect to the cocaine, Aldridge gave his opinion—over defendant's objections—that approximately 1031.83 grams of cocaine were found in various parcels.

Defendant moved to dismiss the charges for insufficient evidence, which was denied. Defendant did not testify or present any evidence in his defense. The jury convicted defendant of both charges, and the trial court consolidated them into one judgment and sentenced defendant to a presumptive-range term of 175 to 219 months imprisonment with a credit of 255 days already served. Defendant timely appealed to this Court.

### Discussion

Defendant's sole argument on appeal is that the expert testimony by Aldridge, the crime lab supervisor, as to the weight of the cocaine found at defendant's residence constituted impermissible hearsay and violated his right to confront an adverse witness under the Sixth Amendment, as applied in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), and most recently in *Melendez-Diaz v. Massachusetts*, 557 U.S. ——, 174 L. Ed. 2d 314 (2009). Defendant does not challenge Aldridge's testimony that the substances are, in fact, marijuana and cocaine. Nor does defendant argue for reversal of his conviction for felonious possession of marijuana.

The Confrontation Clause of the Sixth Amendment "guarantees a defendant's right to confront those 'who bear testimony' against him." *Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 321 (quoting *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 193). Thus, "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Id.* at , 174 L. Ed. 2d at 321. The State contends that the lab reports underlying Aldridge's testimony are not "testimonial" in nature, and, therefore, his testimony is not barred by the Confrontation Clause.

Although the Supreme Court has declined to exhaustively define what amounts to a "testimonial" statement, the Court in *Crawford* observed:

> Various formulations of this core class of "testimonial" statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

541 U.S. at 51-52, 158 L. Ed. 2d at 193 (internal citations, quotation marks, and alterations omitted).

More recently in *Melendez-Diaz*, 557 U.S. ——, 174 L. Ed. 2d at 320, the Supreme Court addressed the constitutionality of the admis-

sion of " 'certificates of analysis' showing the results of the forensic analysis performed on the seized substances." Because the sole purpose of admitting the sworn certificates under state law was to provide *prima facie* evidence of the composition, quality, and weight of the substance at trial, "[t]here [wa]s little doubt that the documents . . . fall within the 'core class of testimonial statements' " outlined in *Crawford. Id.* at ——, 174 L. Ed. 2d at 321 (quoting *Crawford,* 541 U.S. at 51, 158 L. Ed. 2d at 203). Thus the Supreme Court held that under a "rather straightforward application of our holding in *Crawford,*" analysis reports were "testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment." *Melendez-Diaz,* 557 U.S. at ——, 174 L. Ed. 2d at 322.

Our Supreme Court has recently held that under *Melendez-Diaz,* opinion testimony based on an autopsy report including forensic pathology and dental analyses was "testimonial" in nature. *State v. Locklear,* —— N.C. ——, ——, 681 S.E.2d 293, 304-05 (2009). The *Locklear* Court thus held that the defendant's right to confrontation was violated by the admission of the expert testimony based on the pathologist's and dentist's reports where the "State failed to show that either witness was unavailable to testify or that defendant had been given a prior opportunity to cross-examine them." *Id.* at ——, 681 S.E.2d at 305.

The evidence in this case—Aldridge's expert testimony based "solely" on the absent analyst's lab report—is indistinguishable from the opinion testimony held to be unconstitutional in *Locklear.* Similarly, as the State failed to show that the lab analyst who actually weighed the cocaine was unavailable to testify or that defendant had a prior opportunity to cross-examine the analyst regarding the specific report at issue in this case, defendant's right to confront an adverse witness was violated. The trial court thus erred in overruling defendant's objections.[1]

Reversal is not required, however, if the error was harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443(b) (2007) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless . . . it was harmless beyond a reasonable doubt."); *State v. Lewis,* 361 N.C. 541, 549, 648 S.E.2d 824, 830 (2007) (applying harmless beyond reasonable doubt analysis to Confrontation Clause violation). "[O]verwhelming evidence of

---

1. At the time of defendant's trial, 29 April 2009 through 2 May 2009, the United States Supreme Court had not yet rendered its decision in *Melendez-Diaz* (25 June 2009).

guilt may render error of constitutional dimension harmless beyond a reasonable doubt." *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988).

Here, in this case, without objection from defendant, the State produced a statement by defendant that law enforcement officers seized a "kilogram of cocaine" from his residence. In addition, Officer Selogy—the lead police officer executing the search warrant—testified at trial that the cocaine seized at defendant's residence was weighed at the scene and the weight was recorded on property control sheets, which showed six parcels containing over a kilogram of cocaine in total. Defendant's own statement, in conjunction with the unchallenged testimony of law enforcement officers that they seized over one kilogram of cocaine establishes beyond a reasonable doubt that, absent the admission of Aldridge's testimony, a reasonable jury would have found defendant guilty of trafficking in cocaine. *See* N.C. Gen. Stat. § 90-95(h)(3) (2007) (providing that "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine" is guilty of " 'trafficking in cocaine' "); *see also Locklear*, —— N.C. at ——, 681 S.E.2d at 305 (finding Confrontation Clause violation harmless beyond reasonable doubt where "State presented copious evidence" of defendant's guilt). Consequently, we find no prejudicial error.

No Prejudicial Error.

Chief Judge MARTIN and Judge BRYANT concur.