STATE OF NORTH CAROLINA v. KERRY McKINLEY HOUGH, Defendant

No. COA09-790

(Filed 2 March 2010)

**1. Constitutional Law— right to confront witnesses—expert witness—opinion based on another's testing**

Defendant's Sixth Amendment right to confront the witnesses against him was not violated in a cocaine and marijuana prosecution where a forensic chemist's testimony identifying the substances was based on her own opinion, even though she did not conduct the original testing. Her testimony was based on her independent review and confirmation of test results, and the report was not offered for proof of the matter asserted or as *prima facie* evidence that the substances were marijuana and cocaine.

**2. Evidence— hearsay—drug analysis—nontestifying chemist**

Testimony by a forensic chemist that was based on an analysis by another chemist was not hearsay. Evidence offered as the basis of an expert's opinion is not offered for the truth of the matter asserted.

**3. Drugs— constructive possession—non-exclusive control of premises**

The trial court did not err by denying defendant's motion to dismiss charges of possession of cocaine and trafficking in marijuana where there was sufficient evidence of constructive possession, even though there was evidence that defendant did not exclusively control the premises.

Appeal by defendant from judgments entered 10 December 2008 by Judge Calvin E. Murphy in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 2009.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Daniel D. Addison, for the State.*

*Robert W. Ewing for defendant-appellant.*

HUNTER, Robert C., Judge.

Kerry McKinley Hough ("defendant") appeals from judgments entered 10 December 2008 after a jury found him guilty of: (1) possession of cocaine and (2) trafficking in marijuana by possessing more than 10 pounds but less than 50 pounds. After careful review, we find no error.

## Background

On 24 March 2007, Officers James Stansberry ("Officer Stansberry") and John Reid ("Officer Reid") of the Mecklenburg County Police Department, responded to a call reporting domestic violence at 106 Winding Canyon Drive. Upon arriving at the front door of the house, the officers noticed drops of blood on the porch. The officers knocked on the door and did not get a response. Due to the blood and lack of response from the home's occupants, the officers called for a medic unit to come to the scene.

While waiting for the unit to arrive, the officers heard a slamming noise coming from the rear of the house. Upon investigation, the officers saw defendant rolling a city trash can behind the house. Defendant's face was bleeding. Officer Reid asked defendant if he lived at that residence and defendant responded affirmatively. The Officers testified at trial that defendant was behaving suspiciously in that he was attempting to keep the trash can between himself and the officers and did not seem concerned about the obvious injury to his face. Because of defendant's behavior, the officers believed that defendant was hiding something in the trash can that he did not want the offi-

cers to find. Officer Stansberry attempted to open the lid of the trash can twice, but each time defendant slammed the lid back down. Defendant stated that there was only " 'trash in the can' " and then he backed up with the trash can until he reached the right-rear corner of the residence.

Officer Stansberry then struggled with defendant and the trash can was knocked over. Defendant then ran from the scene with the officers in pursuit. Defendant evaded apprehension at that time. Upon returning to the back of the house, the officers saw that two packages had fallen out of the overturned trash can. The packages were the size and shape of telephone books and contained green leafy material. Based on the officers' training and experience, they believed the packaged substance to be marijuana. At that point, a "vice officer" was called to the scene to collect the evidence.

Because the officers had not encountered the female who was allegedly being assaulted at that residence, the officers entered the house to search for her. When Officer Stansberry entered the kitchen, he saw a trash can holding packaging similar to that containing the suspected marijuana outside. Upon searching the living room, the officers saw blood droplets on the floor and noticed that the room was in disarray as if a struggle had occurred there. The officers searched the entire residence and did not find anyone else inside.

After searching the residence, Officer Stansberry went out to the carport area where he discovered a white powder substance on top of a "video-type machine." The officers then called Detective Dan Kellough ("Detective Kellough") who obtained a warrant to search the house for drugs. During the search, Detective Kellough seized the two packages of marijuana that fell out of the trash can outside. He weighed the packages at the scene, and together they weighed 18.6 pounds.

The detective also found a digital scale in the trash can, $1,660.00 inside a "wash mit" in the living room, as well as packaging material and tape in the kitchen. Detective Kellough testified that he also found seven empty wrapper packages in the kitchen trash can, five of which were the same size as the two packages found outside. One of the empty packages had "22.5 lb." written on it in black magic marker and another package had "22.2 lb." written on it as well as the number 156 with a circle around it. Detective Kellough also found an envelope with names and numbers written on one side. On the other side was the name Camellia Garmon with the address 106 Winding Canyon Drive. Detective Kellough testified that he believed the envelope to be

a ledger used to record drug transactions. Mail was found throughout the residence with the names of defendant and Camellia Garmon listed as the recipients. A substance called Inositol was discovered, which Detective Kellough explained is typically added to cocaine to increase volume.

In the master bedroom, 12.3 grams of marijuana were seized. Men's and women's clothing were found in the bedroom, and underneath the bed, a piece of luggage was found with defendant's name on the identification tag. Also in the bedroom, officers found a cellular phone with defendant's name appearing on the screen saver as well as a picture of defendant. In the garage, Detective Kellough seized three bags of what he believed to be cocaine, which weighed 9.5 grams, 9.2 grams, and 9.4 grams, respectively. One of the vehicles in the driveway was registered to defendant and contained mail addressed to him and Camellia Garmon.

At trial, Kamika Daniels Alloway ("Alloway"), a forensic chemist with the Charlotte-Mecklenburg Police Department crime laboratory, testified that she reviewed the lab reports of retired forensic chemist Tony Aldridge ("Aldridge") and believed his analysis to be accurate. Alloway testified that the substance found in the trash can that defendant was rolling constituted 17.05 pounds of marijuana. The three bags recovered from the garage contained cocaine and weighed 7.93 grams, 7.72 grams, and 7.87 grams respectively. The weight of the cocaine and the marijuana varied from the weights recorded at the scene by Detective Kellough; however, Alloway testified that the weights in the lab report did not include the packaging. Alloway admitted on cross examination that she did not test any of the substances herself and was not present when Aldridge conducted the tests.

On 10 December 2008, the jury found defendant guilty of: (1) possession of cocaine and (2) trafficking in marijuana by possessing more than 10 pounds but less than 50 pounds. Defendant was sentenced to 25 to 30 months imprisonment and a second consecutive sentence of 6 to 8 months imprisonment, which was suspended on condition that defendant be placed on supervised probation.

## Analysis

### I. Alloway Testimony

Defendant makes two arguments pertaining to admission of Alloway's testimony concerning the controlled substances seized at his residence: (1) defendant's right to confrontation under the Sixth

Amendment of the United States Constitution was violated; and (2) the testimony amounted to impermissible hearsay.

At trial, defendant made only general objections during Alloway's testimony. Accordingly, defendant has not preserved these arguments for appellate review. N.C. R. App. P. 10(c)(1); *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2541, 174 L. Ed. 2d 314, 331 (2009) ("The defendant *always* has the burden of raising his Confrontation Clause objection[.]"); *State v. Muncy*, 79 N.C. App. 356, 364, 339 S.E.2d 466, 471 ("It is well established that appellate courts will not ordinarily pass on a constitutional question unless the question was raised in and passed upon by the trial court."), *disc. review denied*, 316 N.C. 736, 345 S.E.2d 396 (1986). "However, the North Carolina Rules of Appellate Procedure allow review for 'plain error' in criminal cases even where the error is not preserved 'where the judicial action questioned is specifically and distinctly contended to amount to plain error.' " *State v. Mobley*, —— N.C. App. ——, ——, 684 S.E.2d 508, 210 (quoting N.C. R. App. P. 10(c)(4) (amended Oct. 1, 2009)), *disc. review denied*, —— N.C. ——, —— S.E.2d —— (2010). Defendant has requested plain error review. "Thus, we review to determine whether the alleged error was such that it amounted to a fundamental miscarriage of justice or had a probable impact on the jury's verdict." *Id.* at ——, 684 S.E.2d at 510. When reviewing a constitutional issue under the plain error standard of review, the State is not required to prove that the error was harmless beyond a reasonable doubt. *Id.* at ——, 684 S.E.2d at 510.[1]

### A.  Confrontation Clause

**[1]** First, defendant argues that his constitutional right to confront the witnesses against him was violated when the trial court allowed an expert to testify to analysis that provided the composition and weight of the substances found in and around defendant's residence when the analysis was performed by someone other than the testifying expert.

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Crawford v. Washington*, 124 S. Ct. 1354, 1359, 158 L. Ed. 2d 177, 187 (2004) (quot-

---

1. Defendant argues that *Melendez-Diaz* created a new rule of law and therefore his failure to object did not violate the Rules of Appellate Procedure. Defendant's argument is disingenuous at best. The proper objection was pursuant to the Confrontation Clause, hardly a new rule of law.

STATE v. HOUGH

[202 N.C. App. 674 (2010)]

ing U.S. Const. amend. VI). *Crawford* held that a criminal defendant has the right to confront those who "bear testimony" against him. *Id.* at 1364, 158 L. Ed. 2d at 192. Such testimonial statements include "extrajudicial statements[,]" such as affidavits, or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 1364, 158 L. Ed. 2d at 193 (citation and quotation marks omitted).

The Supreme Court recently revisited the holding of *Crawford* stating that "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz*, 129 S. Ct. at 2531, 174 L. Ed. 2d at 320-21. In *Melendez-Diaz*, the State of Massachusetts presented at trial "certificates of analysis" that served as "prima facie evidence of the composition, quality, and the net weight of the narcotic" defendant was alleged to have possessed. *Id.* at 2531, 174 L. Ed. 2d at 320. There was no accompanying testimony of an expert witness at trial. *Id.* The Court held that because the certificates were testimonial in nature, and the expert who performed the analysis was never subject to cross examination, the admission of the certificates was in error. *Id.* at 2542, 174 L. Ed. 2d at 332.

In applying *Melendez-Diaz*, our State Supreme Court held that "when the State seeks to introduce forensic analyses, '[a]bsent a showing that the analysts [are] unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them' such evidence is inadmissible under *Crawford*." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 305 (2009) (quoting *Melendez-Diaz*, 129 S. Ct. at 2532, 174 L. Ed. 2d at 322). In *Locklear*, the State tendered the testimony of Dr. John Butts, the Chief Medical Examiner for North Carolina, who presented the results of an autopsy performed by Dr. Karen Chancellor and the forensic dental analysis performed by Dr. Jeffrey Burkes. *Id.* at 451, 681 S.E.2d at 304. Dr. Butts did not testify to his own expert opinion; rather, he *exclusively* relayed the findings of Drs. Chancellor and Burkes. *Id.* The Court held that because the State sought to introduce evidence of forensic analyses performed by non-testifying experts, and the State failed to establish that the experts were unavailable to testify or had been subject to cross examination, the defendant's right to confront the witnesses against him was violated. *Id.* at 452, 681 S.E.2d at 305. However, the Court held that the error was harmless beyond a reasonable doubt. *Id.*

Since our Supreme Court's holding in *Locklear*, two opinions from this Court have been issued that pertain to the admission of forensic analysis where the person performing the analysis did not testify at trial.[2] In *State v. Galindo*, —— N.C. App. ——, 683 S.E.2d 785, 787 (2009), Michael Aldridge, a chemist with the Charlotte-Mecklenburg police department, testified that evidence seized from the crime scene was, in fact, marijuana and cocaine. Aldridge explained to the jury the custody procedures at the lab and stated that the tests performed there were relied upon by experts in the field of forensic chemistry; however, his opinion regarding the substances seized was "based '*solely*' on the [absent analyst's] lab report." *Id.* at ——, 683 S.E.2d at 787 (emphasis added). This Court determined that the defendant's Sixth Amendment rights had been violated, but that the error was harmless beyond a reasonable doubt. *Id.* at ——, 683 S.E.2d at 788.

In the *Mobley* case, this Court distinguished *Locklear* and held that the defendant's right to confrontation was not violated where "the testifying expert . . . testified not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data." N.C. App. ——, 684 S.E.2d at 511. The Court further distinguished *Melendez-Diaz*, stating that in that case the analysis at issue was prima facie evidence that the substance was cocaine, while in the case at bar "the underlying report, which would be testimonial on its own, [was] used as a basis for the opinion of an expert who independently reviewed and confirmed the results, and [was] therefore not offered for the proof of the matter asserted under North Carolina case law." *Id.* at ——, 684 S.E.2d at 512. Accordingly, the Court found no error. *Id.* at ——, 684 S.E.2d at 513.

We find the case *sub judice* to be analogous to *Mobley* and find no error, much less plain error, in the admission of Alloway's testimony. Here, Alloway first testified to the laboratory's chain of custody procedures. She then explained in detail the process by which cocaine and marijuana are identified through various laboratory tests. Specifically, with regard to cocaine testing, she stated that "[t]he laboratory requires you to do a preliminary test which consists

---

2. A third case, *State v. Steele*, —— N.C. App. ——, —— S.E.2d —— (COA-09-498) (Jan. 5, 2010), has also been published; however, the facts of that case pertain to the defendant's failure to object to a lab report pursuant to the State's notice-and-demand statute and is not pertinent to our analysis in the case *sub judice*.

of a color test as well as two confirmatory tests which could either be GC mass spec, GCFID, or an FTIR." Alloway then explained how each of these tests are conducted. She further detailed the procedure for testing and identifying marijuana.

Most importantly, Alloway testified that on two occasions prior to trial she completed a "peer review" of Aldridge's analysis in connection with this case, and it was her opinion that the test results were correct. Alloway testified as follows:

Q. What does the peer review entail?

A. A peer review consists of looking for . . . mainly errors in your analysis meaning they wouldn't come to the same conclusion that I came to. So if there is a discrepancy . . . usually a re-analysis is done if required. But for the most part I must say we're pretty good with not having to do the re-analysis. We pretty much come up with the same conclusion.

Q. Did you review the work of Tony Aldridge bearing a complaint number of 20070324084802?

A. Yes.

Q. Within that complaint number did you review his work regarding two control numbers, one being 09933 and the other 09938?

A. Yes.

Q. When did you review that work?

A. On Friday initially and also again today before court.

Q. What tests were conducted on these particular specimens?

. . . .

A. On control number 200709933 a morphological exam was conducted as well as a GC and a mass spec.

Q. With respect to 9938 what tests were done?

. . . .

A. On control number 200709938 a color test, a GC mass spec, and a FTIR was done.

Q. Where the substances associated with those control number weighed?

A. Yes.

Q. Are those tests in accordance with your lab's procedure?

A. Yes.

. . . .

Q. Ms. Alloway, if you would at this point may I ask you to describe each of the tests in laymen's terms as much as possible so that we can all get a feel for it. If you would begin first with the color test.

Alloway then described the specific tests that were run in this case, which resulted in a conclusion that the two substances recovered from the crime scene were marijuana and cocaine. She also testified as to the weights of the drugs seized and explained that the drugs weighed less in the laboratory than at the crime scene because the substances were weighed without packaging in the lab. Alloway was asked: "Based on your experience and review of these test results is it your opinion that the results are correct as published in those two reports?" Alloway responded: "Yes." Alloway did not merely present the test results, or read verbatim from Aldridge's report; rather, she provided her own analysis and expert opinion regarding the accuracy of the reports based on her peer review.

Upon review of Alloway's testimony, we conclude that her expert opinion was based on an independent review and confirmation of test results, unlike the situations presented in *Melendez-Diaz*, *Locklear*, and *Galindo*. As noted in *Mobley*, "[w]ell-settled North Carolina case law allows an expert to testify to his or her own conclusions based on the testing of others in the field." *Id.* at ——, 684 S.E.2d at 511. The report at issue in this case formed the basis of Alloway's expert opinion, but was not offered for the proof of the matter asserted and was not prima facie evidence that the substances recovered from the crime scene were, in fact, marijuana and cocaine. It is not our position that every "peer review" will suffice to establish that the testifying expert is testifying to his or her expert opinion; however, in this case, we hold that Alloway's testimony was sufficient to establish that her expert opinion was based on her own analysis of the lab reports.

In reviewing North Carolina and federal cases that relied on *Crawford* and were decided prior to *Melendez-Diaz*, we do not find that *Melendez-Diaz* abrogates those cases where the analyst who testified asserted his or her own expert opinion. *See, e.g., State v. Delaney*, 171 N.C. App. 141, 613 S.E.2d 699 (2005) (expert in analyzing controlled substances relied on a non-testifying chemist's analyses in forming his expert opinion); *State v. Walker*, 170 N.C. App. 632,

613 S.E.2d 330 (expert testified as to a forensic firearms report conducted by another), *disc. review denied*, 359 N.C. 856, 620 S.E.2d 196 (2005); *State v. Watts*, 172 N.C. App. 58, 616 S.E.2d 290 (2005), *modified on other grounds after remand*, 185 N.C. App. 539, 648 S.E.2d 862 (2007).[3]

Other federal courts have reached this same conclusion under similar facts. In *United States v. Richardson*, 537 F.3d 951, 960 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 2378, 173 L. Ed. 2d 1299 (2009), the court held that while the testifying analyst did not perform the DNA testing, which established that the defendant's DNA was present on the gun he unlawfully possessed, she testified at trial concerning "her own independent conclusions and was subject to cross examination." Moreover, the testifying expert had conducted a "peer review," which was her independent responsibility. *Id.* The court found no Sixth Amendment violation. *Id.*; *see also United States v. Turner*, 591 F.3d 928 (7th Cir. 2010) (holding that the defendant's Sixth Amendment rights were not violated where a laboratory supervisor testified that his conclusions concerning cocaine identification were the same as the analyst who conducted the testing); *United States v. Moon*, 512 F.3d 359 (7th Cir. 2008) (holding the reviewing scientist "was entitled to analyze the data that [the first scientist] had obtained"; noting "the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself"), *cert. denied*, 129 S. Ct. 40, 172 L. Ed. 2d 19 (2008); *United States v. De La Cruz*, 514 F.3d 121 (1st Cir. 2008) (medical examiner could testify as to his opinion on a cause of death when opinion was based on an autopsy report prepared by another person).

In sum, we hold that defendant's Sixth Amendment right to confront the witnesses against him was not violated since Alloway's testimony was based on her own expert opinion, even though she did not conduct the original testing of the substances.

---

3. The holding in *Watts* has since been reviewed by the Federal District Court for the Middle District of North Carolina in *Watts v. Thomas*, 2009 WL 3199891, at *5-6 (M.D.N.C. Sept. 25, 2009), upon a petition for *habeas corpus*. In *Watts*, 172 N.C. App. at 67, 648 S.E.2d at 297, this Court held that the defendant's right to confrontation under *Crawford* was not violated where the analyst who testified concerning DNA evidence testified to his own opinion based on tests run by another analyst. The federal court acknowledged that the parties made arguments based on the holding of *Melendez-Diaz*; however, the court's analysis focused on *Crawford* since that was the only Supreme Court precedent available at the time of the defendant's appeal in state court. *Watts*, 2009 WL 3199891, at *5-6. Ultimately, the federal court held that this Court's analysis was not contrary to the application of Supreme Court precedent and denied the defendant's *habeas* petition. *Id.* at *6.

## B. Hearsay

**[2]** Defendant argues that Alloway's testimony amounted to impermissible hearsay since the analysis that formed the basis of her opinion was performed by another person.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c). "However, out-of-court statements offered for purposes other than to prove the truth of the matter asserted are not considered hearsay." *State v. Call*, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). "Our standard of review on this issue is *de novo*." *State v. Miller*, —— N.C. App. ——, ——, 676 S.E.2d 546, 552 (2009).

"This Court has held that evidence offered as the basis of an expert's opinion is not being offered for the truth of the matter asserted." *Mobley*, —— N.C. App. at ——, 684 S.E.2d at 511; *see also State v. Bethea*, 173 N.C. App. 43, 55, 617 S.E.2d 687, 695 (2005). Accordingly, Alloway's testimony did not constitute hearsay even though it was based, in part, on reports generated by another expert. This assignment of error is without merit.

## II. Motion to Dismiss

**[3]** Finally, defendant argues that the trial court erred in denying his motion to dismiss the charges at the close of evidence as there was insufficient evidence to establish that he constructively possessed the controlled substances.

> In determining the sufficiency of the evidence to withstand a motion to dismiss and to be submitted to the jury, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." We have previously defined substantial evidence as "such relevant evidence as is necessary to persuade a rational juror to accept a conclusion." When ruling on a defendant's motion to dismiss, the trial court must review the evidence in the light most favorable to the state and determine whether the evidence is sufficient to get the case to the jury.

*State v. Banks*, —— N.C. App. ——, ——, 664 S.E.2d 355, 361 (2008) (quoting *State v. Squires*, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), *cert. denied*, 124 S. Ct. 2818, 159 L. Ed. 2d 252 (2004)).

STATE v. HOUGH

[202 N.C. App. 674 (2010)]

"[I]n a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials." *State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986). "Proof of nonexclusive, constructive possession is sufficient. Constructive possession exists when the defendant, 'while not having actual possession, . . . has the intent and capability to maintain control and dominion over' the narcotics." *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)). "Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989).

Here, the evidence tended to show that defendant and Camellia Garmon resided at the house where the controlled substances were seized. Defendant admitted to Officers Stansberry and Reid that he lived there, and upon searching the residence, personal items such as luggage, mail, and a cellular telephone were found with defendant's name on them. Defendant's car was also parked in the driveway. Though there was evidence that defendant did not exclusively control the premises, there was sufficient evidence to establish constructive possession. At the time the officers arrived, there was no indication that anyone else was present in the house and the search revealed no other occupants. Moreover, defendant was pushing the trash can that contained the bulk of the marijuana seized, acted suspiciously when approached by the officers, and ran when Officer Stansberry attempted to lift the lid. In light of the circumstances, we hold that there was sufficient evidence to establish constructive possession. Therefore, the trial court did not err in denying defendant's motion to dismiss.

## Conclusion

We hold that Alloway's testimony did not violate defendant's right to confrontation and did not constitute hearsay. We further hold that the trial court did not err in denying defendant's motion to dismiss.

No error.

Judges BRYANT and JACKSON concur.